Marc Y. Lazo SBN: 215998
**K & L Law Group, P.C.**
2646 Dupont Dr., Suite 60340
Irvine, California 92612
Phone No.: (949) 216-4002
mlazo@kllawgroup.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JACOBY, GEORGE VACHTSEVANOS, AND JAVIER ECHAUZ as Shareholders,<br><br>Plaintiffs,<br><br>vs.<br><br>NEUROPACE, INC., MICHAEL FAVET, FRANK FISCHER, GREG GARFIELD, RAKHI KUMAR, JOSEPH JACOB, EVAN NORTON, RENEE RYAN, and DOES 1-50<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1. FRAUDULENT CONCEALMENT**<br>**2. BREACH OF FIDUCIARY DUTY**<br>**3. UNFAIR BUSINESS PRACTICES (CAL. CIV. CODE §17200)**<br>**4. VIOLATION OF RIGHT TO INSPECT (CAL. CORP CODE §1601)**<br>**5. VIOLATION OF 15 U.S.C. 78**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff James Jacoby, George Vachtsevanos, and Javier Echauz (collectively "Plaintiffs") in their capacity of shareholders, by and through their undersigned counsel, submit the following Complaint against Defendant NEUROPACE, INC. ("NEUROPACE" or "Defendants").

## PARTIES

1. At all times herein, Plaintiff James Jacoby was a citizen of Georgia and a stockholder of NEUROPACE.

2. At all times herein, Plaintiff George Vachtsevanos, was a citizen of Georgia and a stockholder of NEUROPACE.

1

COMPLAINT

3. At all times herein, Plaintiff Javier Echauz, was a citizen of Georgia and a stockholder of NEUROPACE.

4. Defendant NEUROPACE is a corporation organized and existing under the laws of Delaware with its principal place of business at 455 North Bernardo Avenue, Mountain View, California 94043.

5. At all times herein, Defendant MICHAEL FAVET, is an individual and Chief Executive Officer of NEUROPACE residing in the State of California.

6. At all times herein, Defendant FRANK FISCHER, is an individual and Board Member of NEUROPACE residing in the State of California.

7. At all times herein, Defendant GREG GARFIELD, is an individual and Board Member of NEUROPACE residing in the State of California.

8. At all times herein, Defendant RAKHI KUMAR, is an individual and Board Member of NEUROPACE residing in the State of California.

9. At all times herein, Defendant JOSEPH JACOB, is an individual and Board Member of NEUROPACE residing in the State of California.

10. At all times herein, Defendant EVAN NORTON, is an individual and Board Member of NEUROPACE residing in the State of California.

11. At all times herein, Defendant RENEE RYAN, is an individual and Board Member of NEUROPACE residing in the State of California.

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as Does 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges that each of these fictitiously named defendants is in some manner responsible for the events and damages alleged herein and will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

## JURISDICTION AND VENUE

13. This action arises under the Security Exchange Commission Act of 1934.

14. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

15. This Court has personal jurisdiction over NEUROPACE because, on information and belief, Defendant has committed the acts described herein within the State of California, specifically in the Northern District of California.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391 and 28 U.S.C. § 1400(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Northern District of California; NEUROPACE has a regular and established place of business in the Northern District of California; NEUROPACE conducts business in this District; NEUROPACE is otherwise situated such that it is at home in this district.

**BACKGROUND FACTS**

17. NEUROPACE's Board of Directors includes Michael Favet, Frank Fischer, Greg Garfield, Rakhi Kumar, Joseph S. Jacob, Evan Norton, and Renee Ryan (collectively "The Board" or "Board Members").

18. On or about July 27, 2004, Plaintiffs executed a Stock Purchase Agreement ("SPA") with NEUROPACE in which stock was purchased to finance the company as a startup.

19. The Exercise Notice and Restricted Stock Purchase Agreement executed on July 27, 2004, between NEUROPACE and Javier Ehauz exercised his option to purchase 100 shares of common stock under the 1999 Stock plan. The purchase price of the shares was $.45 a share, for a total purchase price of $45.00.

20. The Exercise Notice and Restricted Stock Purchase Agreement executed on July 27, 2004 between NEUROPACE and Javier Ehauz exercised his option to purchase 24, 062 shares under the 1999 stock plan. The purchase price of the shares was $0.30 per share for a total purchase price of $7,218.60

21. Plaintiffs alleges on or about July 27, 2004, NEUROPACE, through its agents and representatives, represented that the fair market value at the time of the SPA was $0.60 per share.

22. By 2019 NEUROPACE's common stock reached a fair market value of $22 per share. NEUROPACE's financial projections were excellent, the company was growing rapidly, and a planned initial public offering was to occur in 2021.

23. Plaintiffs allege they were not given notice of a stockholder meeting.

24. The NEUROPACE "Notice of Stockholder Action Without a Meeting" states The Board unilaterally approved a waiver of the "anti-dilution protection."

25. Upon information and belief, the "anti-dilution protection" unilaterally waived in The Board's interest was an essential term of the SPA executed in 2004.

26. Plaintiffs allege the reverse stock split resulted in dilution lowering the stock price to $0.30 a share and it proceeded to drop further.

27. On, April 9, 2021, the U.S. Securities and Exchange Commission required an explanation for the significant valuation drop.

28. Upon information and belief, NEUROPACE, through its representatives and agents responded to the SEC citing several factors including difficulty in their efforts to raise capital and negative sales due to COVID-19. These claims were made despite the company status from 2019-2021.

29. Upon information and belief, The Board members benefited from the dilution of the common stockholder's equity through executive compensation packages and equity positions with Symmetry Capital providing NEUROPACE capital.

30. Plaintiffs directed a request to the attorneys of NEUROPACE for access to the corporate records and books or in the alternative a restoration of stock in the amount they were harmed. In the request the reason for the inspection was to ensure the representations made to them in the Notice of Stockholder Action Without a Meeting Letter (NSA) dated October 7, 2020, are accurate.

31. Plaintiffs demand on NEUROPACE explained they wished to investigate potential wrongdoing and mismanagement at the company as they were led to believe it was doing well prior to the decision to make the reverse stock split.

32. To date the parties have not been able to find an amicable settlement.

# FIRST CAUSE OF ACTION

**Fraudulent Concealment**

**(By All Plaintiffs Against All Defendants, and DOES 1-50)**

33. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs.

34. Plaintiffs entered into a Stock Purchase Agreement (SPA) in 2004.

35. Upon information and belief, the SPA included an anti-dilution clause.

36. The SPA was valid and properly executed by Plaintiffs.

37. Defendants blatantly failed to give notice to the Plaintiffs of the shareholder meeting in which the dilution of stock through a reverse stock split was voted upon.

38. The reverse stock split was designed to increase the amount of shares through diluting the shares served no purpose based on prior company disclosures.

39. Upon information and belief, Defendants attempt to obscure and hide the shareholder meeting to unilaterally rescind a mutually agreed upon contractual term was knowingly concealing their breach of contract.

40. Defendants actions were actually and proximately the cause of harm to Plaintiffs.

# SECOND CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(By All Plaintiffs Against All Defendants, and DOES 1-50)**

41. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs.

42. Upon information and belief, Defendant's equity positions with firm's giving NEUROPACE capital were a conflict of interest.

43. Upon information and belief, the reverse stock purchase that benefited these equity positions was a conflict of interest such that breached their fiduciary duty to NEUROPACE.

44. Upon information and belief, the dilution and reverse stock purchase of NEUROPACE stock interminably damaged the company's position as well as the shareholders.

45. The SEC request for NEUROPACE to explain their actions shows an objective basis of harm to the company.

46. Upon information and belief, Defendants' actions were intentional.

47. Upon information and belief, Defendants' actions harmed NEUROPACE, its interests, and its shareholders.

## THIRD CAUSE OF ACTION

**Violation of Unfair Business Practices Cal. Civ. Code § 17200**

**(By All Plaintiffs Against All Defendants, and DOES 1-50)**

48. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs.

49. Defendant has breached their contract with the Plaintiffs and has engaged in unethical unscrupulous, and substantially injurious behavior.

50. Defendants fraudulent concealment is unethical, unscrupulous, and substantially injurious to NEUROPACE, the Plaintiffs, and its shareholders.

51. Defendants breach of fiduciary duty for financial gain is unethical, unscrupulous, and substantially injurious to both NEUROPACE, the Plaintiffs, and its shareholders.

52. Contracts serve to define the business relationship between two entities and breach of said agreements is a danger to the Plaintiffs and all potential shareholders with contractual agreements.

53. Defendants' breach of contract, breach of fiduciary duty, and further fraudulent concealment offends California Business and Professional Practices.

54. The Defendants Unfair Business Practices have caused damage to the Plaintiffs, including but not limited to loss of stock/company value.

## FOURTH CAUSE OF ACTION

**Violation of Right to Inspect Cal. Corp. Code § 1601(a)**

**(By All Plaintiffs Against All Defendants, and DOES 1-50)**

55. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs.

56. June 30, 2021, Plaintiffs requested access to the corporate books and records for the purpose of inspection.

57. Plaintiffs, under the information provided by NEUROPACE and The Board, understood the company to be financially healthy.

58. Defendants despite the financial standing of the company sought to dilute the stock.

59. Defendants' actions and conduct led to the dilution of stock at their own benefit.

60. Plaintiffs requested access to the corporate books and records to evaluate the company's health and whether the actions taken by The Board were in the company's best interests.

## FIFTH CAUSE OF ACTION

**Violation of Securities Exchange Act 15 U.S.C. 78i(2)**

**(By All Plaintiffs Against All Defendants, and DOES 1-50)**

61. Plaintiffs reallege and incorporate by reference all of the allegations set forth in the preceding paragraphs.

62. Upon information and belief, The Board, acting in their capacity as fiduciaries, held NEUROPACE to be in good standing before shareholders and investors.

63. NEUROPACE's Board Members purposefully acted to invalidate anti-dilution agreements for the purpose of diluting the stock.

64. NEUROPACE, through its Board Members, invalidated valid contracts unilaterally. This violates public policy regarding shareholder's rights.

65. Upon information and belief, NEUROPACE Board Members actions were designed to manipulate NEUROPACE stock absent any cognizable benefit.

66. Upon information and belief, the depress of NEUROPACE stock through a reverse stock split was facilitated only by the invalidation of the anti-dilution agreements The Board unilaterally invalidated.

67. Upon information and belief, the depressing of the stock was used to induce people to buy the stock.

68. Upon information and belief, The Board by means of interstate commerce, the stock market, and the postal service to engage in unfair business practices.

**PRAYER FOR RELIEF**

Plaintiffs respectfully requests that this Court enter judgment in its favor and grant the following relief:

**ON THE FOURTH CAUSE OF ACTION:**

1. Compel production of all NEUROPACE's Board books and records, including any minutes, resolutions, reports, presentations or memoranda made, reviewed by, or provided to The Board, and all communications by any member of The Board, or anyone who reported to any member of The Board, concerning the reverse stock split.

2. Compel production of all writings constituting, referring or relating to any governing documents of NEUROPACE including its Articles of Incorporation, Bylaws, any applicable Rules and Regulations, Consent Resolutions, Corporate Certificates, Proxies, and Shareholder Agreements to which the corporation was a party, including any revisions, amendments and addendums thereto, as well as any meeting minutes, corporate resolutions and Board votes pertaining to the same;

3. Compel production of all writings constituting any meeting minutes, corporate resolutions and Board votes referring or relating to the waiver of any anti-dilution rights possessed by any shareholders of NEUROPACE or any form of proxy granted to any other person on behalf of any shareholder;

4. Compel production of all writings constituting, referring or relating to any meeting minutes, whether in final or draft form, memorializing regular meetings of the NEUROPACE's Board of directors and any committees for the period of January 2020 through August 2021.

5. Compel production of all writings constituting, referring or relating to any correspondence sent to any shareholders of NEUROPACE for the period of January 2020 through August 2021, including but not limited to proof of deliver; and

6. Compel production of all writings constituting, relating to or evidencing that NEUROPACE complied with Delaware General Corporation Law Section 228(e) in taking stockholder action without a meeting by written consent of the holders or their proxies of the outstanding shares necessary to authorize such action.

**ON ALL CAUSES OF ACTION:**

1. General damages as determined by the Court
2. Special damages as determined by the Court.
3. Attorney's fees as granted by Cal. Corp. Code §1604
4. Any other remedies the court finds reasonable under the facts

Dated:   October 18, 2021                               K&L LAW GROUP, P.C.

_____
Marc Lazo
Attorneys for Plaintiffs